## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

UNITED STATES,
*Plaintiff*,

v.

No. 3:16-cr-114 (VAB)

BOBBY GUTIERREZ,
*Defendant.*

## RULING ON MOTION FOR COMPASSIONATE RELEASE

Bobby Gutierrez ("Defendant") has moved for compassionate release under 18 U.S.C. §
3582(c)(1)(A). Mot. for Compassionate Release, ECF No. 477 (July 9, 2020); *see also* Mem. in
Supp., ECF No. 477-1 (July 9, 2020) ("Def.'s Mem."). The Government opposes his motion.
Resp. in Opp'n to Mot. for Compassionate Release, ECF No. 482 (July 17, 2020) ("Gov't
Opp'n").

For the reasons set forth below, the Court **DENIES** Mr. Gutierrez's motion for
compassionate release.

## I.       BACKGROUND

On November 21, 2016, Mr. Gutierrez pled guilty to Counts One and Two of an
indictment charging him with conspiracy to possess with intent to distribute, five kilograms or
more of cocaine (Count One), and one kilogram or more of heroin (Count Two) in violation of
21 U.S.C. §§ 846, 841(b)(1)(A)(ii), and 841(b)(A)(i). Plea Agreement, ECF No. 146 (Nov. 21,
2016).

On April 24, 2017, the Court sentenced Mr. Gutierrez to a term of imprisonment of 160
months on Counts One and Two, to be served concurrently; a five year term of supervised

release; and a special assessment of $200. J., ECF No. 308 (May 8, 2017). Count Three was dismissed upon the Government's oral motion. Minute Entry, ECF No. 295 (Apr. 24, 2017). Mr. Gutierrez's sentencing guideline range was 135–168 months, and the Court focused on the "need for continued vocational training and substance abuse treatment." Def.'s Mem. at 4. The Court noted Mr. Gutierrez had completed his GED and various vocational programs while incarcerated. *Id.*

On July 9, 2020, Mr. Gutierrez moved for compassionate release under the First Step Act. Def.'s Mot.; Def.'s Mem.

On July 17, 2020, the Government opposed Mr. Gutierrez's motion. Gov't Opp'n.

On July 28, 2020, the Court held a telephonic motion hearing. Minute Entry, ECF No. 484 (July 28, 2020).

## II.    STANDARD OF REVIEW

A court may modify a term of imprisonment on compassionate release grounds in two circumstances: (1) "upon motion of the Director of the Bureau of Prisons;" or (2) "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, . . ." 18 U.S.C. § 3582(c)(1)(A); *see also United States v. Gotti*, 422 F. Supp. 3d 613, 614 (S.D.N.Y. 2020) ("In December 2018, as part of the First Step Act, Congress worked a change to th[e] rule of long standing" that a court could only modify a sentence upon motion from the Bureau of Prisons. "A court may now consider a motion for compassionate release made by a defendant who has exhausted his administrative remedies by petitioning the Director of the BOP

to make such a motion, assuming the Director fails to act on the inmate's request within thirty

days[.]").

 In determining whether to grant a motion to modify a sentence, a court must consider the

factors set forth in 18 U.S.C. § 3553(a). A court may only grant such a modification if it finds

that "extraordinary and compelling reasons warrant" a modification, or that

> the defendant is at least 70 years of age, has served at least 30 years
> in prison, pursuant to a sentence imposed under section 3559(c), for
> the offense or offenses for which the defendant is currently
> imprisoned, and a determination has been made by the Director of
> the Bureau of Prisons that the defendant is not a danger to the safety
> of any other person or the community.

*Id.* A court must also find that "such a reduction is consistent with applicable policy statements

issued by the Sentencing Commission." *Id.*

## III. DISCUSSION

 The U.S. Sentencing Guidelines (U.S.S.G) § 1B1.13 states in part:

> [T]he court may reduce the term of imprisonment if . . . the court
> determines that [e]xtraordinary and compelling reasons warrant the
> reduction; . . . [t]he defendant is not a danger to the safety of any
> other person or to the community, as provided in 18 U.S.C. §
> 3142(g); and [t]he reduction is consistent with this policy statement.

*United States v. Lisi*, 440 F. Supp. 3d 246, 149 (S.D.N.Y. 2020) (quoting U.S.S.G. §

1B1.13(1)(A), (2), and (3)). While there exists a dispute among district courts as to whether a

court must still defer to the BOP's determination of what qualifies as an "extraordinary and

compelling reason" to modify a sentence, a majority of district courts, including in this District,

have found that courts may make that determination independently. *See*, *e.g.*, *United States v.*

*Rivernider*, No. 3:10-cr-222 (RNC), 2020 WL 597393, at *3 (D. Conn. Feb. 7, 2020) (collecting

cases); *Lisi*, 440 F. Supp. 3d at 249 (collecting cases). Yet, U.S.S.G. "§ 1B1.13's descriptions of

'extraordinary and compelling reasons' remain current," *United States v. Ebbers*, No. 02 Cr.

3

1144-3 (VEC), 2020 WL 91399, at *4 (S.D.N.Y. Jan. 8, 2020), and "[t]he standards for considering the motion remain helpful as guidance to courts which hear these motions without the BOP as an intermediary," *United States v. Zullo*, No. 09 Cr. 0064-02 (GWC), 2019 WL 7562406, at *3 (D. Vt. Sept. 23, 2019).

Mr. Gutierrez asks the Court "to reduce his sentence to time served, with a reasonable period of home confinement as a condition of release" because of his "asthma, hyperlipidemia, hyperthyroidism, dangerously high blood pressure, and a vitamin d deficiency." Def.'s Mem. at 1. He argues that "[a]ny one of his underlying conditions *alone* is a serious risk factor for extremely adverse outcomes in the event that [Mr. Gutierrez] is infected with COVID-19." *Id.* (emphasis in the original). In his view, "[t]he growing coronavirus pandemic, which public health experts and policymakers recognize is especially dangerous in the confines of correctional institutions, in combination with Gutierrez's specific medical conditions, is an extraordinary and compelling circumstance" warranting a reduction in sentence to time served. *Id.*

The Government opposes Mr. Gutierrez's motion. The Government argues that, even if the Court finds his health conditions compelling, Mr. Gutierrez "is still not entitled to a sentence reduction." Gov't Opp'n at 8. "A reduction in his sentence is not consistent with the Sentencing policy statement and does not reflect the relevant 3553(a) factors, including the seriousness of the offense, respect for the law, and just punishment." *Id.* The Government notes Mr. Gutierrez's repeated parole violations as further evidence that he remains a danger to the community.

### 1.    Extraordinary and Compelling Reasons

Since the outbreak of the COVID-19 pandemic, numerous courts within this Circuit have held that a defendant's pre-existing health conditions in combination with the increased risks of COVID-19 in prisons constitute "extraordinary and compelling reasons" warranting relief. *See,*

*e.g.*, *United States v. Daugerdas*, -- F. Supp. 3d --, 2020 WL 2097653, at *3 (S.D.N.Y. 2020) (defendant serving a 180 month term of imprisonment and incarcerated at a facility with no reported cases of COVID-19; the district court found that his underlying health conditions— Type 2 diabetes, obesity, hypertension, and high cholesterol—and the risk of COVID-19 in prisons generally constituted an extraordinary and compelling reason, but did not ultimately grant compassionate release); *United States v. Morales*, No. 3:19-cr-121 (KAD), 2020 WL 2097630, at *3 (D. Conn. May 1, 2020) (recognizing district courts have found that "[a]sthma is a condition that places a person at increased risk for serious complications, or even death, if the person contracts COVID-19[,]" and creates a[n] extraordinary and compelling reason for sentence reduction"); *United States v. McCarthy*, No. 3:17-cr-0230 (JCH), 2020 WL 1698732, *5 (D. Conn. Apr. 8, 2020) ("[Mr.] McCarthy is 65 years old and suffers from COPD, asthma, and other lung-related ailments . . . . The defendant's age and medical condition, taken in concert with the COVID-19 public health crisis, constitute an extraordinary and compelling reason to reduce [Mr.] McCarthy's sentence."); *United States v. Zukerman*, -- F. Supp. 3d --, 2020 WL 1659880, at *5 (S.D.N.Y. 2020) ("Zukerman's age, combined with diabetes, hypertension, and obesity, satisfy" the requirement of an extraordinary and compelling reason to modify his sentence).

Mr. Gutierrez refers to guidance from the Center for Disease Control that lays out serious underlying medical conditions that create high risk for severe illness from COVID-19, including those with moderate to severe asthma, hypertension, high blood pressure, diabetes, and chronic lung or kidney disease. Def.'s Mem. at 18 (citations omitted). Mr. Gutierrez complains of the BOP's testing methodology and handling of containing the coronavirus at FCI Miami, where he is currently incarcerated. *Id.* at 20. Mr. Gutierrez is between Stage 1 and Stage 2 hypertension,

5

and is currently prescribed medicine to regulate it. *Id.* at 29.[1] Even with medication, "his blood pressure levels have not remained stable and very drastically over a 6 month period." *Id.* Mr. Gutierrez notes that, despite his classification as Care Level 2, medical records demonstrate "that the facility did [not perform] weekly or monthly blood pressure checks[.]" *Id.* at 30. Mr. Gutierrez also "suffers from chronic asthma" and has been prescribed an inhaler, *id.*, and "suffers from hyperlipidemia[,]" *id.* at 31.[2] He argues that his "high blood pressure, asthma, hyperlipidemia, and hyperthyroidism" make him "more susceptible to COVID-19." *Id.* at 32. He has multiple risk factors, making him all the more susceptible to severe complications. *Id.*

"The Government acknowledges the risks of Covid-19 to the general population and especially to those at heightened risk because of specified preexisting conditions." *Id.* at 9. In its view, however, neither the risk from pre-existing conditions nor the special risks presented in correctional facilities "constitute[] [an] extraordinary and compelling reason[] warranting immediate release." *Id.* The Government notes that, "with respect to hypertension, . . . the CDC has stated that hypertension may put individuals at an increased risk for severe illness from Covid-19, but that the level of evidence is mixed, meaning that multiple studies have reached different conclusions." *Id.* The Government also disputes that Mr. Gutierrez's medical records indicate that he has moderate or severe asthma, and specifies that Mr. Gutierrez did not request a prescription for an asthma inhaler until April 15, 2020, and that his asthma was not mentioned during his interview with probation for his pre-sentence report. *Id.* at 10. Finally, the

---

[1] Mr. Gutierrez notes that the amlodipine he has been prescribed is "a calcium channel blockers (CCBs)," and suggests that little is known about the drug's effects "in treating or preventing COVID-19." Def.'s Mem. at 29.

[2] "'Hyperlipidemia' is 'a general term for elevated concentrations of any or all of the lipids in the plasma[.]'" *Ortiz v. Wilkie*, No. 19-2730, 2020 WL 1870323, at *1 (Vet. App. Apr. 15, 2020).

Government states that hyperlipidemia, "by itself, is not a risk factor and it does not appear that [Mr.] Gutierrez has heart disease." *Id.*

The Court disagrees.

Other district courts in this circuit have that the same underlying medical conditions, alone or separately, combined with the risk of coronavirus, constitute extraordinary and compelling reasons for release. *See United States v. Sedge*, 16-cr-537 (KAM), 2020 WL 2475071, at *3 (E.D.N.Y. May 13, 2020) ("Given that the defendant is over 50 and has demonstrated existing medical conditions that would place him into a high-risk category including hypertension, hyperlipidemia, and coronary artery disease, defendant has demonstrated that  he is at a higher risk for suffering life threatening complications from COVID-19."); *United States v. Pena*, -- F. Supp. 3d --, 2020 WL 2301199, at *4 (S.D.N.Y. May 8, 2020) (defendant had hypertension and hyperlipidemia, and the district court recognized the heightened risk hypertension poses); *United States v. Scparta*, -- F. Supp. 3d --, 2020 WL 1910481, at *9 (S.D.N.Y. Apr. 20, 2020) (defendant suffered from "hypertension, sleep apnea, high blood pressure, and high cholesterol" and the court recognized that the CDC "has identified hypertension as a comorbidity that increase the likelihood of serious risk from COVID-19"); *United States v. Sawicz*,  -- F. Supp. 3d --, 2020 WL 1815851, at *2 (E.D.N.Y. Apr. 10, 2020) ("While the defendant's hypertension does not place him squarely within any of the [Sentencing Guideline's] Policy Statement's definitions of 'extraordinary and compelling reasons,' the defendant asserts that the COVID-19 pandemic, combined with his particular vulnerability to

complications from COVID-19 . . . constitutes an 'extraordinary and compelling reason' for his release. . . . [The court] agree[s] with the defendant . . . .").[3]

Furthermore, as of August 3, 2020, FCI Miami has reported ninety-five active COVID-19 cases among inmates, twenty-three active cases among staff, zero staff or inmate deaths, and three recovered inmates. *See COVID-19, Coronavirus*, BUREAU OF PRISONS, https://www.bop.gov/coronavirus/ (last visited June 3, 2020).

Accordingly, the Court finds extraordinary and compelling reasons exist.

### 2. Exhaustion

Normally, under 18 U.S.C. § 3582(c)(1)(A), a court may not modify or reduce a defendant's sentence on that defendant's motion when the defendant has not exhausted his administrative remedies by either (1) appealing a failure of the BOP to bring such a motion on the defendant's behalf or (2) the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility. The Government concedes that the exhaustion requirement has been met. Gov't Opp'n at 8 (citing Mr. Gutierrez's Application to the Warden dated May 25, 2020, ECF No. 477-2 (July 9, 2020)). Although the Warden did not respond, more than thirty days have lapsed from the receipt of the request.

Accordingly, the exhaustion requirement has been met.

---

[3] Both Congress and the Attorney General have recognized the emergency presented to the BOP by COVID-19. In passing the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Congress provided that "if the Attorney General finds that emergency conditions will materially affect the functioning of the Bureau [of Prisons], the Director of the Bureau may lengthen the maximum amount of time for which the Director is authorized to place a prisoner on home confinement . . . ." CARES Act § 12003(b), Pub. L. No. 116-136, 134 Stat. 2881 (2020). Attorney General William Barr subsequently made a "finding that emergency conditions are materially affecting the functioning of the Bureau of Prisons." *Sawicz*, 2020 WL 11815851, at *1 (citing a memorandum for the Director of BOP).

### 3. Section 3553(a) Factors

After establishing that extraordinary and compelling reasons exist, Section 1B1.13 of the Guidelines "further provides that a court may reduce a term of imprisonment only if the court determines that '[t]he defendant is not a danger to the safety of any other person or to the community[,]'" and after considering the factors listed in 18 U.S.C. 3553(a). *McCarthy*, 2020 WL 1698732 at *5.

Mr. Gutierrez argues that "the Court should conclude that the time that [he] has already served is sufficient to satisfy the purposes of sentencing." Def.'s Mem. at 33. In his view, "[a]lthough the present offenses qualified [Mr.] Gutierrez for the serious sentence that [the] Court originally imposed, the sentencing purpose of just punishment does not warrant a sentence that includes exposure to a life-threatening illness." *Id.* Mr. Gutierrez has now been incarcerated for approximately fifty-seven months, including good time credit. *Id.* at 34. At FCI Miami, he works as a barber and has taken advantage of the educational training offered. *Id.* Mr. Gutierrez also has not "had any disciplinary infractions since incarceration" and "is frequently called upon by BOP Staff to assist with facility needs, such as helping clean the unit." *Id.* at 35. He contends "that after four and a half years in prison, with a successful track record [ ], the structure of home confinement and supervision will be enough." *Id.* at 36.

The Government responds that the crime Mr. Gutierrez was convicted of—running a drug trafficking organization and distributing a significant amount of narcotics—"was indisputably serious" and that he has "repeatedly violated court-ordered supervision or parole." Gov't Opp'n at 11. Here, the Government argues, "a reduction of his sentence would not only undermine the sentencing goals that this Court's sentence was designed to promote, but risks inflicting harm to the community. The risk of recidivism—borne out by past experience—as well

9

as undermining both specific and general deterrence, and unwarranted sentencing disparities, counsels against granting [Mr.] Gutierrez's release." *Id.* at 12.

The Court agrees.

Here, the § 3553(a) factors weigh against Mr. Gutierrez's release.

Most significantly, Mr. Gutierrez's current term of incarceration stems from a serious violation of the terms of supervised release, following another long period of incarceration. At sentencing, Mr. Gutierrez's criminal history category was IV, in part because of his commission of the underlying felony. Pre-Sentence Report, ECF No. 204 (Feb. 10, 2017). He has an extensive criminal record and a history of committing serious offenses while under parole or supervised release. The Court appreciates the steps that Mr. Gutierrez has taken while incarcerated, but his sentence must "reflect the seriousness of the offense, . . . and . . . provide just punishment for the offense[.]" 18 U.S.C. § 3553(a)(2)(A). *See United States v. Gamble*, 3:18-CR-0022-4 (VLB), 2020 WL 1955338, at *6 (D. Conn. Apr. 23, 2020) (denying motion for release "because Defendant is ill suited for home confinement because of his length[y] criminal history and [because] no conditions [of release] could adequately protect the public"); *United States v. Lopez*, 16-CR-317 (PAE), 2020 WL 3100462, at *3 (S.D.N.Y. June 10, 2020) (denying motion for compassionate release where defendant had sixty-six months left of their sentence and "release now, or any time soon, [was] therefore incompatible with the sentence [the original Judge] thoughtfully imposed, even considering the new facts that have emerged in connection with the pandemic"). And, at this time, Mr. Gutierrez's current term of imprisonment appears to remain necessary to ensure the safety of the community.

Accordingly, having considered all of these factors as well as those set forth in 18 U.S.C. § 3553(a), the Court concludes that they weigh against immediate release.

## IV.    CONCLUSION

For the reasons explained above, the Court **DENIES** the motion for compassionate

release under 18 U.S.C. § 3582(c)(1)(A).

**SO ORDERED** at Bridgeport, Connecticut, this 3rd day of August, 2020.

/s/ Victor A. Bolden
Victor A. Bolden
United States District Judge